FILED

2013 Sep-26  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **JOHN NUNNELEE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:11-CV-2039-VEH** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff John Nunnelee ("Mr. Nunnelee") initiated this property damage action against the United States of America (the "Government") on June 14, 2011.  (Doc. 1).  At that particular juncture, Mr. Nunnelee was proceeding *pro se*.  Subsequently, due to the complexity of the case, on October 5, 2011, the court appointed counsel to represent Mr. Nunnelee.  (Doc. 14).

Mr. Nunnelee filed a first amended complaint on February 20, 2013, asserting four tort-based causes of action[1] against the Government pursuant to the Federal Tort

---

[1] Mr. Nunnelee's property-related claims are for trespass, negligence, private nuisance, and public nuisance.  (Doc. 21 at 5-7).

Claims Act (the "FTCA"), 28 U.S.C. § 1346(b).[2]  (Doc. 21).  After answering Mr. Nunnelee's amended pleading (Doc. 24) on April 26, 2013, the Government filed, on June 7, 2013, a Motion To Dismiss Plaintiff's First Amended Complaint for Lack of Jurisdiction (Doc. 29) (the "Motion"), a supporting brief (Doc. 30),[3] and several evidentiary materials.  (Docs. 31-33)

Mr. Nunnelee opposed the Motion on June 24, 2013 (Doc. 35), and the Government followed with its reply on July 9, 2013.  (Doc. 36).  This case was then reassigned to the undersigned on July 15, 2013.  (Doc. 37).  Having studied both sides' positions, the Motion is due to be granted in part and denied in part.

## II.   STANDARDS

### A.   Statute of Limitations

An unpublished panel of the Eleventh Circuit has articulated the following

---

[2] Section 1346(b) permits claims against the Government,

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

[3] The page references to Doc. 30 correspond with the court's CM/ECF numbering system.

standard governing a statute of limitations defense asserted in a lawsuit arising under

the FTCA:

> We review *de novo* the grant of a motion to dismiss. *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotation marks and citation omitted). "Dismissal ... on statute of limitations grounds is appropriate ... if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (internal quotation marks and citation omitted). "At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense <u>only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute</u>." *Id.* at 1288 n.13 (internal quotation marks and citation omitted).

*Keira v. United States Postal Service*, 157 Fed. App'x 135, 136 (11th Cir. 2005)

(emphasis added).

Regarding timeliness under the FTCA:

> In order to bring a tort action against the United States, a plaintiff must act within the two-year statute of limitations period established by the FTCA. The applicable provision dictates that "[a] tort against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). <u>The general rule is that a claim under the FTCA accrues at the time of injury</u>. *United States v. Kubrick*, 444 U.S. 111, 120, 100 S. Ct. 352, 358, 62 L. Ed. 2d 259 (1979). <u>In certain situations, such as medical malpractice, the claim may accrue at a later date</u>. The rule for medical malpractice claims is that they accrue when the plaintiff knows of both the injury and its cause. *Id.*, at 22, 100 S. Ct. at 359. The rationale behind the modified rule is to protect plaintiffs

who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the medical malpractice are in the control of the tortfeasor or are otherwise not evident."

*Diaz v. United States,* 165 F.3d 1337, 1339 (11th Cir. 1999) (emphasis added).

### B.    Subject Matter Jurisdiction Generally

Unlike state courts, federal tribunals are bodies of limited jurisdiction, meaning that the grounds for the court's jurisdiction must be present at the time the complaint is filed and must be obvious on the face of the complaint.  Fed. R. Civ. P. 8(a); 28 U.S.C. § 1330, *et seq.*  The law is clear that Mr. Nunnelee, the person seeking to invoke federal jurisdiction in this case, has the burden to demonstrate that the court has subject matter jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 56 S. Ct. 780, 782, 80 L. Ed. 1135 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case.").

Further, lack of subject matter jurisdiction cannot be waived or expanded by judicial interpretation, and a jurisdictional deficiency can be raised at any time by either the parties or the court.  *See, e.g., Sosna v. Iowa*, 419 U.S. 393, 398, 95 S. Ct. 553,  556-57, 42 L. Ed. 2d 532 (1975) (citation omitted) ("While the parties may be permitted to waive nonjurisdictional defects, they may not by stipulation invoke the

judicial power of the United States in litigation which does not present an actual 'case or controversy,' and on the record before us we feel obliged to address the question of mootness before reaching the merits of appellant's claim."); *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18, 71 S. Ct. 534, 542, 95 L. Ed. 702 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties.").

### C.    Standing Specifically

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."  *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

The Supreme Court of the United States recently has elaborated upon several principles pertaining to the constitutional doctrine of standing:

> Article III of the Constitution confines the judicial power of federal courts to deciding actual "Cases" or "Controversies." §2. <u>One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so.</u>  This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560–561 (1992).  In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm. "<u>The presence of a disagreement, however sharp and</u>

acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Diamond, supra*, at 62.

* * *

Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, but Article III demands that an "actual controversy" persist throughout all stages of litigation. *Already*, *LLC v. Nike, Inc.*, 568 U. S. ___, ___ (2013) (slip op., at 4) (internal quotation marks omitted).

*Hollingsworth v. Perry*, ___ U.S. ___, 133 S. Ct. 2652, 2661, 186 L. Ed. 2d 768 (2013) (emphasis added).

## III.   ANALYSIS

### A.    Statute of Limitations

In opposing the Government's Motion with respect to its statute of limitations defense, Mr. Nunnelee maintains that "[b]oth the Supreme Court and the Eleventh Circuit have recognized a 'discovery rule' of accrual of a claim under the Federal Tort Claims Act ("FTCA"), and, thus, a delay to the start of the limitations period, where either the injury or its potential cause is not apparent." (Doc. 35 at 5). While Mr. Nunnelee is correct that the Supreme Court in *Kubrick* and the Eleventh Circuit in *Diaz* embraces the application of a discovery-related accrual rule, *i.e.*, knowledge of injury and its cause, in the context of a FTCA medical malpractice claim, neither opinion indicates that this same framework should extend to property damage claims

6

under the FTCA.

As *Diaz* provides, most FTCA cases adhere to the general rule that a claim accrues at the time of injury. Further, while *Diaz* acknowledges that "[i]n certain situations," exceptions to this general accrual standard exist, the court only expressly addresses the diverging rule for medical malpractice claims arising under the FTCA.

The additional Eleventh Circuit authorities upon which Mr. Nunnelee relies are all, akin to *Diaz*, FTCA medical malpractice decisions. *See, e.g., Price v. United States*, 775 F.2d 1491, 1492-93 (11th Cir. 1985) ("This appeal concerns the issue of when the statute of limitations begins to run in a medical malpractice action under the FTCA."); *McCullough v. United States*, 607 F.3d 1355, 1356 (11th Cir. 2010) ("The district court granted summary judgment for the United States because Mr. McCullough's administrative claim was filed more than two years after Mr. McCullough knew that his paralysis was caused by a spinal abscess.").

Mr. Nunnelee also cites to several non-binding opinions in support of his position. Therefore, the court reviews these decisions to determine whether any of them is helpful in its efforts to address this apparently still open question of Eleventh Circuit law.[4]

---

[4] Neither Mr. Nunnelee nor the Government has cited to any on-point binding authority which directly deals with this specific issue. Further, this court's own research has failed to reveal such a case.

7

First, in *Kronisch v. United States*, 150 F.3d 112, 116 (2d Cir. 1998), the Second Circuit was faced with a plaintiff who was claiming personal injury as "one of the victims of the CIA's program to test the effects of mind-altering drugs, including lysergic acid diethylamide ("LSD"), on unwitting subjects beginning in the early 1950s." In evaluating the timeliness of the plaintiff's FTCA claim, the court set forth the following framework:

> Ordinarily, a plaintiff's FTCA claim accrues at the time of injury. *See Barrett v. United States*, 689 F.2d 324, 327 (2d Cir.1982). However, in cases such as this one, where the government conceals the acts giving rise to plaintiff's claim, or where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called "diligence-discovery rule of accrual" applies. Under this rule, "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Id.* Discovery of the "critical facts" of injury and causation is not an exacting requirement, but requires only knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it.... [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice. *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y.1987) (citations omitted) (Motley, J.), *aff'd on other grounds*, 847 F.2d 1031 (2d Cir.1988), *cert. denied*, 493 U.S. 1020, 110 S. Ct. 719, 107 L. Ed. 2d 739 (1990). A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, *see Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S. Ct. 1843, 85 L. Ed. 2d 142 (1985), but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence, *see id.* at

35 & n. 107.

*Kronisch*, 150 F.3d at 121 (footnote omitted) (emphasis added).  In *Kronisch*, the defendant did not contest the application of the diligence-discovery rule of accrual. *Id.* at n.4.

Second, in *LaBauve v. Olin Corp.*, 231 F.R.D. 632 (S.D. Ala. 2005), Judge Steele used a "reasonably should have known" accrual standard when evaluating the timeliness of the plaintiff's property damage claims arising under the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"):

> The obvious question for assessing the timeliness of plaintiff Pressley's claims is when the limitations period commenced.  That issue turns on her FRCD [*i.e.*, the federally required commencement date], or when she knew or reasonably should have known that her property had been damaged by mercury contamination. *See* 42 U.S.C. § 9658(b)(4). As reflected by the statutory language, the "reasonably should have known" requirement is an "objective standard for accrual" based not on what a plaintiff actually knew, but what she reasonably should have known. *See Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 198 (2d Cir. 2002) (FRCD applies "if there was sufficient information that a plaintiff reasonably should have known the cause of the injury earlier than he actually knew"). This standard requires less than actual knowledge, but more than "mere suspicion, whatever its reasonableness." *Id.* at 205–06; *see also O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139, 1148 (9th Cir. 2002) ("the federal standard requires more than suspicion alone").

*LaBauve*, 231 F.R.D. at 658-59 (footnote omitted); *see also id.* at 654 (explaining

statutory-based FRCD).

Third, parenthetically, Mr. Nunnelee cites to *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 205 (2d Cir. 2002),which is not a FTCA case, but rather a CERCLA decision upon which *LaBauve* relies.  *See Freier*, 303 F.3d at 205 ("The discovery-of-cause standard set by the FRCD, defined as 'the date the plaintiff knew (or reasonably should have known) that the personal injury' was caused or contributed to by the hazardous materials, focuses on knowledge, actual or imputed, not on suspicion.").

Fourth, Mr. Nunnelee refers to *O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139 (9th Cir. 2002).   *O'Connor*, like *Freier*, is another CERCLA case. *O'Connor*, 311 F.3d at 1146 ("We hold that CERCLA preempts California's discovery rule and that the California limitations period did not commence until Plaintiffs knew or should have known of their claim.").

The primary authority upon which Mr. Nunnelee relies in support of his accrual position is *LaBauve*.  However, because *LaBauve* is CERCLA-based and tied to specific statutory language which codifies the applicable accrual standard, this court does not find it to be particularly instructive with respect to which accrual standard to apply under the FTCA.  Certainly, Mr. Nunnelee has not referred to any authority which connects principles of accrual under CERCLA to the FTCA.  The court reaches

10

a similar conclusion with respect to the persuasiveness of *Freier* and *O'Connor*.

*Kronisch*, on the other hand, arises under the FTCA and outside of the medical malpractice context.   Further, *Kronisch* involves allegations of governmental concealment and difficulties discerning the source of an injury, which issues Mr. Nunnelee contends are also pivotal to his case.  Under such circumstances and in the absence of a contention by the Government that the more exacting FTCA accrual standard should apply here,[5] the court adopts the accrual rule recognized in *Kronisch* to the statute of limitations issues presented in this lawsuit.

Further, guided by the framework for evaluating a statute of limitations defense asserted under the FTCA as suggested by the unpublished Eleventh Circuit panel in *Keira*,[6] the court concludes that the Government has not met its burden of showing that Mr. Nunnelee can prove no set of facts to satisfy this less demanding accrual

---

[5] In its briefing, the Government appears to agree with Mr. Nunnelee that the more lenient discovery accrual rule applies in this instance and, instead, challenges Mr. Nunnelee's ability to satisfy such a standard on account of a lack of due diligence on his part.  (*See, e.g.*, Doc. 30 at 23 ("Where either the injury or its potential cause is not apparent, however, the Supreme Court and Eleventh Circuit have recognized a 'discovery rule' of accrual.")); (*see id.* at 24 ("Although a claim 'does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim,' such suspicions 'do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." (citing *McCullough*, 607 F.3d at 1361))).

[6] Unpublished decisions of the Eleventh Circuit are not binding precedent, but they may be cited as persuasive.  11th Cir. R. 36-2.

standard.  More particularly, if Mr. Nunnelee can prove that his FTCA claim accrued on November 15, 2010, as he asserts, then his administrative claim filed with the Department of the Army on June 27, 2012, falls within the two-year statute of limitations period.

While the court acknowledges the Government's contention that "the Court should resolve jurisdictional issues of fact on the motion to dismiss, rather than apply a summary judgment standard and reserve ruling until after trial[,]" none of the cases upon which the Government relies involves an FTCA-driven statute of limitations defense.  More specifically, only a few of those referenced decisions even arise under the FTCA and not one of them sets forth any standards of review to apply when a statute of limitations defense is asserted.  *See, e.g., OSI, Inc. v. United States*, 285 F.3d 947, 949 (11th Cir. 2002) ("The district court dismissed the FTCA claims for lack of jurisdiction, on the grounds that the discretionary function exception applied, and granted summary judgment on the RCRA and CERCLA claims.") (emphasis added).

Therefore, due to the limited development of the record, the more prudent avenue to follow here is to deny the Government's Rule 12-based challenge to the timeliness of Mr. Nunnelee's FTCA claim.  *Cf. Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011) ("This Court

has explained '[w]hen the jurisdictional basis of a claim is intertwined with the merits [of the claim], the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction.'" (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990))). Accordingly, for all these reasons, the statute of limitations portion of the Government's Motion is due to be denied.

### B.    Standing

Secondarily, the Government maintains that this case should be dismissed jurisdictionally because Mr. Nunnelee lacks standing to bring it.  More specifically, the Government argues that Mr. Nunnelee "lacks standing because he does not own – and has never owned – the property on which his claims are based and for which he is seeking damages."  (Doc. 30 at 35).  Mr. Nunnelee responds that, regardless of his ownership status, "[p]ossession is an adequate property interest to give a plaintiff standing to sue on claims for trespass and nuisance" and that a claim of negligence requires no real property interest.  (Doc. 35 at 14).

However, absent from Mr. Nunnelee's opposition are any cases which analyze a plaintiff's standing to sue for property-related tort claims in the absence of an ownership interest or a possessory right, *e.g.*, by way of a tenant holding a lease on the allegedly affected property.  Instead, the bulk of Mr. Nunnelee's opposition

focuses upon the *prima facie* elements that are required of each claim.

In *Blevins v. Hillwood Office Center Owners' Ass'n*, 51 So. 3d 317, 318, 319, 320 (Ala. 2010), the Supreme Court of Alabama addressed whether a holder of an ineffective quitclaim deed who "had begun operating a law practice in the unit" had standing to sue a homeowner's association for nuisance, breach of fiduciary duty, conspiracy, specific performance, conversion, and declaratory relief. Prior to the appeal's reaching the Supreme Court of Alabama, the original plaintiff added the homeowner who had given him the quitclaim deed as a party plaintiff to the litigation. *See Blevins*, 51 So. 3d at 321 ("In December 2008, Jerry amended his complaint to add Carol as a plaintiff.").

In analyzing the jurisdictional issue, the Supreme Court of Alabama began by explaining that:

> " 'When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.' " *Riley v. Pate*, 3 So. 3d 835, 838 (Ala. 2008) (quoting *State v. Property at 2018 Rainbow Drive*, 740 So. 2d 1025, 1028 (Ala. 1999)). "Standing is ' " '[t]he requisite personal interest that must exist at the commencement of the litigation.' " ' " *Cadle Co. v. Shabani*, 4 So. 3d 460, 462–63 (Ala. 2008) (emphasis added) (quoting *Pharmacia Corp. v. Suggs*, 932 So. 2d 95, 98 (Ala. 2005), quoting in turn *In re Allison G.*, 276 Conn. 146, 156, 883 A. 2d 1226, 1231 (2005)). "The jurisdictional defect resulting from the plaintiff's lack of standing cannot be cured by amending the complaint to add a party having standing." *Cadle Co.*, 4 So. 3d at 463 (emphasis added). Thus, according to Hillwood, if Jerry lacked standing to sue at the commencement of the action, the December 2008

amendment adding Carol as a plaintiff was a legal nullity. We agree.

> " ' "To be a [person with standing], the person must have a real, tangible legal interest in the subject matter of the lawsuit." ' " *Ex parte Simpson*, 36 So. 3d 15, 22 (Ala. 2009) (quoting *Ex parte Chemical Waste Mgmt., Inc.*, 929 So. 2d 1007, 1010 (Ala. 2005), quoting in turn *Doremus v. Business Council of Alabama Workers' Comp. Self–Insurers Fund*, 686 So. 2d 252, 253 (Ala. 1996)). The person asserting the claim must specifically allege an injury in fact to a "legally protected right." *Property at 2018 Rainbow Drive*, 740 So. 2d at 1027 (emphasis omitted).

*Blevins*, 51 So. 3d at 321 (emphasis added).

The *Blevins* Court continued:

> This Court has often said that it is " ' "duty bound to notice *ex mero motu* the absence of subject-matter jurisdiction." ' " *Riley v. Hughes*, 17 So. 3d 643, 648 (Ala. 2009) (emphasis added) (quoting *Baldwin County v. Bay Minette*, 854 So. 2d 42, 45 (Ala.2003), quoting in turn *Stamps v. Jefferson County Bd. of Educ.*, 642 So. 2d 941, 945 n. 2 (Ala. 1994)). However, just because the Court is duty bound to notice the *absence* of subject-matter jurisdiction, it does not follow that it is so bound to construct theories and search the record for facts to *support* the existence of jurisdiction for plaintiffs who choose to stand mute in the face of a serious jurisdictional challenge. On the contrary,

> > "when the parties have not provided sufficient legal or factual justification for this Court's jurisdiction, this Court is not obligated to embark on its own expedition beyond the parties' arguments in pursuit of a reason to exercise jurisdiction. The burden of establishing the *existence* of subject-matter jurisdiction falls on the party invoking that jurisdiction. *See, e.g., Ex parte HealthSouth Corp.*, 974 So. 2d 288 (Ala. 2007) (setting forth the plaintiff's burden of demonstrating standing to bring an action, an issue of subject-matter jurisdiction); ... *Ex parte Ray–El*, 911 So.

> 2d 1100, 1104 (Ala. Crim. App. 2004) (placing the burden
> to ' "justify the jurisdiction of this court" ' on the person
> bringing a habeas petition as a 'next friend' (quoting
> *Whitmore v. Arkansas*, 495 U.S. 149, 164, 110 S. Ct. 1717,
> 109 L. Ed. 2d 135 (1990))); *cf. Bush v. Laggo Props.*,
> *L.L.C.*, 784 So. 2d 1063, 1065 (Ala. Civ. App. 2000)
> ('Once a party challenges the trial court's jurisdiction,
> pursuant to Rule 12(b)(1), [Ala. R. Civ. P.,] the burden of
> establishing jurisdiction is on the plaintiff.' (citing
> *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir.
> 1980)))."
>
> *Crutcher v. Williams*, 12 So. 3d 631, 635–36 (Ala. 2008) (some
> emphasis added).

*Blevins*, 51 So. 3d at 322 (emphasis by underlining added).  Ultimately, the Supreme

Court of Alabama determined that the "burden of establishing subject-matter

jurisdiction" had not been met, vacated the circuit court judgment, and dismissed the

appeal.  *See Blevins*, 51 So. 3d at 323 ("This action, having begun at the instance of

someone without standing, cannot now be maintained by someone with standing."

(citing *Cadle Co. v. Shabani*, 4 So. 3d 460, 463 (Ala. 2008))).

   While *Blevins* does not entirely mirror the jurisdictional question facing this

court, it underscores a critical component of standing, which is that the plaintiff has

the burden to demonstrate the existence of a legally cognizable interest and cannot

count on the court to construct jurisdictional contentions for him.  Additionally,

*Blevins* held that merely possessing property, without more, is insufficient to create

standing to sue for nuisance and other property-related claims under Alabama law.[7]

*Cf. Kowalski v. Tesmer*, 543 U.S. 125, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004) ("We

have adhered to the rule that a party 'generally must assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third

parties.'" (emphasis added) (quoting *Warth v. Selden*, 422 U.S. 490, 499, 95 S. Ct.

2197, 2205,45 L. Ed. 2d 343 (1975))); *Warth*, 422 U.S. at 499-50 ("As an aspect of

justiciability, the standing question is whether the plaintiff has 'alleged such a

personal stake in the outcome of the controversy' as to warrant his invocation of

federal-court jurisdiction and to justify exercise of the court's remedial powers on his

behalf." (emphasis added) (citing *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691,

703, 7 L. Ed. 2d 663 (1962))).

---

[7] 28 U.S.C. § 1346(b) "requires that the 'whole law of the State where the act or omission occurred[,]' including its choice of law rules, be applied." *Gonzalez-Jiminez De Ruiz v. United States*, 378 F.3d 1229, 1230 n.1 (11th Cir. 2004) (quoting *Richards v. United States*, 369 U.S. 1, 11, 82 S. Ct. 585, 592, 7 L. Ed. 2d 492 (1962)); *see also Schippers v. United States*, 715 F.3d 879, 886 (11th Cir. 2013) ("Thus, it is the law of this circuit that, when faced with a standing and capacity question in a FTCA case, the court must first look to the law of the state where the act or omission occurred . . . to determine both the plaintiff's standing and capacity to sue."). Here, under Alabama's choice of law provisions, Alabama law governs all substantive issues, including the question of whether an individual has standing and capacity to sue. *See Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 57 (Ala. 2007) ("[Under] the principle of *lex loci delicti*, . . . the courts of this state 'will determine the substantive rights of an injured party according to the law of the state where the injury occurred.'" (quoting *Fitts v. Minnesota Min. & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991))).

Here, the court agrees with Mr. Nunnelee that standing to assert property-related claims under Alabama law is not limited solely to owners of land and that possessors of land can, in some instances, also have standing.  However, for that to occur, such persons must, at a minimum, have some separate type of cognizable right to the possession of the property beyond merely continuing to reside there after the death of the owner.  *Cf. Williams v. Moore*, 36 So. 3d 533, 542 (Ala. Civ. App. 2008) ("Absent such right of possession, there can be no action based on trespass." (internal quotation marks omitted) (quoting *Avery v. Geneva County*, 567 So.2d 282, 289 (Ala. 1990))); *Avery*, 567 So. 2d at 289 ("The effect of this rule is that the decedent did not have standing to bring a trespass action against the defendants at the time the dam was broken.").

In this instance, Mr. Nunnelee skirts the ownership issue (*see* Doc. 35 at 14 ("Therefore, even if it were true, *arguendo*, that Mr. Nunnelee has no ownership interest in the property on which he and his family reside.")),[8] and premises his standing to assert trespass and nuisance claims solely upon his possessing the

---

[8]   Later in his brief, Mr. Nunnelee acknowledges that "legal title [to the property] purportedly passed to Ronald Knight on April 1, 2008, and [that] Mr. Knight has since filed an ejectment action to regain legal possession of the property . . . ."  (Doc. 35 at 16); (*see also* Doc. 33-8 at 2-3 (copy of "MORTGAGE FORECLOSURE DEED" with certified filing date of April 1, 2008, in favor of William Ronald Knight)).

property by way of his residency there.  However, in doing so, he has failed to

substantiate the legal contours of his possessory interest purportedly recognized under

Alabama law and, because he has the burden to demonstrate standing, his showing

in this regard is inadequate.

For example, while Mr. Nunnelee cites to several cases in which a <u>tenant</u> has

stated a cause of action for nuisance (Doc. 35 at 16), he does not contend that he

qualifies as a tenant under Alabama law.  Also, while Mr. Nunnelee points to his

physical possession of the property since 2004, he does not maintain that he has

acquired a property interest through adverse possession or some other means

recognized by Alabama law.  *Id.*

Further, while Mr. Nunnelee suggests that no real property interest is required

to support standing for his negligence claim (Doc. 35 at 14), none of the cases cited

in his brief analyzes the issue of standing when a plaintiff is pursuing a negligence

claim for damages to property where he resides.  More specifically, *AALAR, Ltd., Inc.*

*v. Francis*, 716 So. 2d 1141 (Ala. 1998), involves no issue of standing.  *Armstrong*

*Business Services, Inc. v. AmSouth Bank*, 817 So. 2d 665 (Ala. 2001), merely

mentions (and does not evaluate) standing in the introductory portion of the decision.

*See Armstrong*, 817 So. 2d at 668 ("ABS and Armstrong also conceded that

Armstrong lacked standing to assert ABS's claims.").  Finally, *Teitel v. Wal-Mart*

19

*Stores, Inc.*, 287 F. Supp .2d 1268 (M.D. Ala. 2003), addresses the standing of the plaintiffs to assert a fraud claim <u>as assignees under a mortgage</u>. *See Teitel*, 287 F. Supp. 2d at 1285 ("Viewing the facts in the light most favorable to the Plaintiffs, there is an actual concrete particularized diminished property value or loss of financial gain that the Plaintiffs have suffered because of the Defendant's alleged fraudulent behavior that can be redressed through a favorable decision.").

Therefore, for all these reasons, the court finds that Mr. Nunnelee has not satisfied his standing burden with respect to any of the claims asserted in his first amended complaint and, as a result, will dismiss this case without prejudice for lack of subject matter jurisdiction.

## IV.   CONCLUSION

Accordingly, the Government's Motion is due to be granted as to Mr. Nunnelee's lack of standing, but otherwise is due to be denied.  The court will enter a separate order of dismissal consistent with this memorandum opinion.

**DONE** and **ORDERED** this 26th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

20